# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA

EPIC GAMES, INC.,

                    Plaintiff,

        v.

Ediz ATAS (a/k/a SINCEY CHEATS and
VANTA CHEATS); and DOES 1–5,

                 Defendants.

4:25-cv-109

COMPLAINT
WITH JURY DEMAND

Plaintiff Epic Games, Inc. ("Epic" or "Plaintiff") brings the following complaint against Defendants Ediz Atas (a/k/a Sincey Cheats and Vanta Cheats) and DOES 1–5 (collectively, "Defendants"):

## I.     NATURE OF CASE

1. Founded in 1991, Epic is a leader in the interactive entertainment and 3D engine technology fields. Over the past 30 years, Epic has, among other innovations, created some of the most highly acclaimed and commercially successful video games and immersive digital content and experiences.

2. One of Epic's most famous successes is *Fortnite*, a vibrant ecosystem full of a variety of social entertainment experiences, with over 500 million registered players. *Fortnite* is a multiplayer online experience where people interact in an online world. *Fortnite* also includes thousands of creator-made games across genres, such as adventure, roleplay, survival, and more.

3. In *Fortnite*, players can purchase in-game cosmetic items as well as a *Fortnite* "Battle Pass," through which players can unlock cosmetics as they "level up" their accounts by playing games, completing quests and challenges, and more. Players can also earn cosmetic items without purchasing them either by participating in free events, spending virtual currency

earned by progressing the Battle Pass, or by winning certain tournaments through skill and mastery of the game's mechanics. Cosmetic items have a variety of effects, from changing the appearance of the player's character to allowing the character to do a specific dance, among other things. However, none of these in-game rewards or cosmetics provide players with a competitive advantage.

4. Epic does not tolerate cheating and bans the use of cheat software in *Fortnite*. Cheat software in video games includes any outside program or method used by someone to gain an unfair advantage over other, non-cheating players. In order to play *Fortnite*, Epic requires that players agree not to use cheats to ensure a level playing field.

5. Defendants are individuals who seek to undermine this level playing field by creating, marketing, distributing, and selling cheat software for use in *Fortnite*. This cheat software enables Defendants' customers to cheat by gaining competitive advantages that Epic has expressly prohibited in *Fortnite* such as the ability to see other players and items through solid walls and the ability to automatically aim at other players without user inputs.

6. Epic continuously implements and updates a variety of technological protection measures (often referred to as "anti-cheat") to prevent players from using Defendants' cheat software in *Fortnite*. Defendants know this, and regularly update their cheat software in an attempt to circumvent Epic's protection measures as well as to try to make their cheat software "undetected" by Epic's anti-cheat measures.

7. Defendants' continued efforts to encourage and profit from cheating are willful and intentional. At least one Defendant went so far as to fraudulently impersonate an Epic employee in order to have YouTube videos promoting the functionality of their cheat software and displaying *Fortnite* gameplay in violation of Epic's copyrights put back up after Epic had the

infringing videos taken down pursuant to the Digital Millennium Copyright Act.

8.    Defendants' actions harm Epic.  Cheaters that use Defendants' cheat software violate their contracts with Epic, infringe Epic's copyrights, and circumvent Epic's technological protection measures.  Despite Epic's efforts to stop Defendants, they continue to update and sell their cheat software without concern for their unlawful activities, or the unlawful activities of their customers.  When Defendants' customers cheat in *Fortnite*, it undermines the integrity of the level playing field Epic has created and drives away non-cheating players.  Epic has expended substantial resources investigating Defendants' conduct, implementing detections for Defendants' customers, and preventing them from playing *Fortnite* when Epic detects them using Defendants' cheat software.

9.    As a result of Defendants' egregious conduct and resulting damage to Epic, Epic brings this action seeking damages and injunctive relief against Defendants for (i) trafficking in circumvention technology in violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201(a)(2) ("DMCA") (against all Defendants); (ii) tortious interference with a contract in violation of North Carolina law (against all Defendants); (iii) direct copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.* (against all Defendants); (iv) secondary copyright infringement in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.* (against all Defendants); (v) submitting fraudulent DMCA communications in violation of the DMCA, 17 U.S.C. § 512(f) (against Sincey Cheats); (vi) false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a) (against Sincey Cheats); and (vii) unfair competition in violation of N.C. Gen. Stat. § 75-1.1 (against all Defendants).

## II.    JURISDICTION AND VENUE

10.    This Court has jurisdiction over the subject matter of Epic's federal claims under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the DMCA, 17 U.S.C. §§ 512(f)

and 1201, the Copyright Act, 17 U.S.C. §§ 106 and 501, *et seq.*, and the Lanham Act, 15 U.S.C. § 1125(a).  This Court has supplemental jurisdiction over Epic's related state law claims under 28 U.S.C. § 1367(a).

11.     This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privileges of conducting activities and doing business in the United States, including North Carolina, and have specifically targeted Epic with their unlawful actions described below.

12.     Defendants conduct substantial sales of the cheat software that is the subject of this action to customers in the United States and North Carolina.  Epic has issued tens of thousands of bans against *Fortnite* accounts that used Defendants' cheat software since February 2022, including over 15,000 bans against accounts in the United States.

13.     Defendants are targeting potential customers in the United States, including North Carolina, knowing that a substantial market exists for their cheat software.  Defendants display their products for sale in prices using U.S. dollars and advertise and provide customer support for their cheat software in the English language.

14.     Defendants have entered into contracts for the provision and distribution of their cheat software in the United States, including North Carolina, and have further entered into contractual agreements with Epic in North Carolina.  For example, several customers that purchased Defendants' cheat software posted in Defendants' social media channels that they used the cheat in connection with geographically bound tournaments in North America.

15.     Defendants also know that their conduct creating, advertising, and selling their cheat software is likely to cause harm to Epic in North Carolina, and in this District, where Epic is located, and are further accessing Epic's servers, which are located in this District.

16.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because this is a District in which a substantial part of the events giving rise to Epic's claims occurred, in which Defendants committed acts of trafficking in circumvention devices, copyright infringement, and/or where Epic's injuries were suffered.

### III.     THE PARTIES

17.     Epic is a corporation duly organized and existing under the laws of the state of Maryland.  Epic is registered to do business in North Carolina and has its principal place of business in Wake County, North Carolina.

18.     Ediz Atas is an individual who, on information and belief, resides in Stuttgart, Germany and is known by the online aliases "Sincey," "Sincey Cheats," and other aliases that incorporate the term "Sincey."  He also advertises and sells *Fortnite* cheat software under the "Vanta" or "Vanta Cheats" name.  Ediz Atas is referred to herein as "Sincey Cheats" or collectively with the other defendants as "Defendants."

19.     On information and belief, Doe 1 is an individual who resides outside the United States and is known by the online alias "Kezza."  Doe 1 was a reseller of the cheat software at issue in this case.  Doe 1 is referred to herein as "Doe 1" or collectively with Sincey Cheats and the other Doe defendants as "Defendants."

20.     On information and belief, Does 2-5 are or have been resellers of the Vanta cheat software for *Fortnite*.  Does 2-5 are referred to herein collectively with Sincey Cheats and Doe 1 as "Defendants."

21.     Upon information and belief, Defendants (a) personally participated in and/or (b) had the right and ability to supervise, direct and control the wrongful conduct alleged in this Complaint, and (c) derived direct financial benefit from that wrongful conduct.

22.     On information and belief, each of the Defendants was, at all times mentioned in

this complaint, acting as the agent, employee, or alter ego of every other Defendant, and in doing the things mentioned herein, was acting within the course and scope of such agency, employment, or other relationship and with full knowledge and consent of each of the other Defendants.

## IV.    FACTS APPLICABLE TO ALL CLAIMS

### A.    Epic and *Fortnite*

23.    Founded in 1991, Epic is a Cary, North Carolina-based company and leader in the interactive entertainment and 3D-engine technology fields.

24.    Epic operates *Fortnite*, a vibrant ecosystem full of a variety of social entertainment experiences, with over 500 million registered players. *Fortnite* was released broadly on July 25, 2017. *Fortnite* is a multiplayer online experience where people interact in an online world. *Fortnite* is free to download; however, *Fortnite* sells in-game items such as outfits for characters.

25.    *Fortnite*'s extremely popular play-for-free "Battle Royale" game mode was released to the public on September 26, 2017. *Fortnite*'s Battle Royale involves dropping a maximum of 100 players into a large map where the players battle each other until only one player (or team) remains standing. *Fortnite*'s Battle Royale game mode can include *Fortnite*'s unique "building" mechanic in which players can construct and take advantage of structures, ramps, and cover to defeat other players and characters in intense combat. *Fortnite*'s "Zero Build" Battle Royale game mode removes this build mechanic, emphasizing the players' precision, thinking, and spatial awareness skills.

26.    In *Fortnite*'s Battle Royale, a player's success is often determined by their skill level, which can be practiced and honed through gameplay. For example, a player's success in combat is often determined by their ability to use their controller, or mouse and keyboard, to

precisely maneuver their character, maintain awareness of their virtual surroundings, place and edit structures in an advantageous manner, and to aim at their target quickly and accurately.

27. Epic designed *Fortnite*'s Battle Royale game mode to ensure a fair playing field for all players. Epic does not sell or provide items to players that would give any user a competitive advantage and expressly prohibits cheating.

28. Epic constantly develops, implements, and updates technological protection measures designed to prevent individuals using cheat software from accessing *Fortnite*. When Epic detects a player attempting to play or playing *Fortnite* while using cheat software, that player is either prevented from loading and playing *Fortnite* at all, or kicked out of *Fortnite* once cheat software is detected, and is banned from using *Fortnite*.

**B.    Epic's Intellectual Property Rights**

29. Epic is the author and owner of all rights and title to the copyrights in *Fortnite*, including, without limitation, in its computer software and audiovisual works.

30. Epic's copyrights in various versions of *Fortnite*'s computer code and audiovisual works are the subjects of U.S. Copyright Registrations listed in the table below.

| Title | Registration No. | Registration Date | Nature of Work |
|---|---|---|---|
| *Fortnite* | TX 8-766-571 | Jan. 31, 2019 | Revised computer program |
| *Fortnite* | TX 8-507-210 | Mar. 21, 2018 | Revised computer program |
| *Fortnite* | PA 2-066-544 | Sept. 13, 2017 | Revised computer program; audiovisual material |
| *Fortnite* | TX 8-186-254 | July 14, 2015 | Computer program |
| *Fortnite* | TX 8-254-659 | Mar. 3, 2016 | Computer program |
| *Fortnite* | TXu 1-895-864 | Dec. 18, 2013 | Computer program |
| *FORTNITE* (2016 Rev. 2) | TX 8-352-178 | Dec. 23, 2016 | Computer program |
| *Fortnite* – Battle Royale Mode | PA 2-087-919 | Mar. 23, 2018 | Revised and new audiovisual material |
| *Fortnite* Battle Royale Chapter 5 Season 1 | TX 9-420-173 | July 3, 2024 | Computer program; audiovisual material |

-7-

| | | | |
|---|---|---|---|
| *Fortnite* Chapter 4: Season OG | TX 9-388-536 | Apr. 25, 2024 | Computer program; audiovisual |
| *Fortnite* Reload | TX 9-437-406 | Sept. 17, 2024 | Computer program; audiovisual material |
| *Fortnite* (Rev. 3) | TX 8-508-464 | Sept. 8, 2017 | Computer program; audiovisual material |

True and correct copies of the certificates of registration for the above-listed copyrights are attached as **Exhibit 1**.

31.     Epic also owns common law and federal registrations for various trademarks associated with its business, including but not limited to EPIC GAMES.

32.     Epic first began using the EPIC GAMES mark in February 1999.  Since then, Epic has continually used the EPIC GAMES mark in connection with video game software, video game software development, electronic commerce, and related goods and services.  These marks are found on and within Epic's website, video games, and featured prominently on related advertising.

33.     In addition to common law rights through its wide use of the EPIC GAMES mark, Epic is the owner of several trademark registrations for the EPIC GAMES marks, including those set forth in the table below.

| Mark | Registration Information |
|---|---|
| EPIC GAMES | **Reg. No.:** 2,527,709<br><br>**Reg. Date:** Jan. 8, 2002<br><br>**First Use in Commerce:** Feb. 3, 1999 (Int'l Classes 9, 42) |
| EPIC GAMES | **Reg. No.:** 5,712,420<br><br>**Reg. Date:** Apr. 2, 2019<br><br>**First Use in Commerce:** |

| | |
|---|---|
| | June 11, 2013 (Int'l Class 9)<br><br>Sept. 3, 2008 (Int'l Class 25)<br><br>Mar. 2, 2000 (Int'l Class 35, 41, 45) |
| EPIC GAMES | **Reg. No.:** 6,895,482<br><br>**Reg. Date:** Nov. 8, 2022<br><br>**First Use in Commerce:**<br><br>Dec. 6, 2018 (Int'l Class 35)<br><br>July 11, 2018 (Int'l Class 38)<br><br>Apr. 21, 2018 (Int'l Class 41)<br><br>Mar. 30, 2016 (Int'l Class 42)<br><br>Sept. 18, 2019 (Int'l Class 45) |

True and correct copies of these trademark registrations are attached as **Exhibit 2**.

34.     These registrations constitute prima facie evidence of Epic's ownership of and exclusive rights to use the EPIC GAMES mark in connection with the goods and services recited in the registrations.

### C.     Epic's Efforts to Protect *Fortnite* from Cheaters

35.     Epic takes the issue of cheating seriously.  Epic expressly prohibits cheating in its agreements with *Fortnite* players, implements and requires all players to install anti-cheat technological measures to identify and stop the use of cheat software, and permanently bans those who use cheat software.

36.     In order to play *Fortnite*, a player must agree to the *Fortnite* End User License Agreement that is specific to the country or region where the player is located.  Specifically, by "downloading or using [*Fortnite*]…you are agreeing to be bound by the terms of [the *Fortnite* EULA]."  A true and correct copy of a representative example of a *Fortnite* End User License

Agreement applicable to players in the United States (hereafter "*Fortnite* EULA") is attached as **Exhibit 3**.

37.     The *Fortnite* EULA grants a "personal, non-exclusive, non-transferable, non-sublicensable limited right and license to install and use" *Fortnite*, subject to several license conditions.

38.     Among other conditions, a *Fortnite* licensee may not:

(a)     "remove, disable, circumvent, or modify any proprietary notice or label or security technology included in it;"

(b)     "create, develop, distribute, or use any unauthorized software programs to gain advantage in any online or other game modes;" or

(c)     "behave in a manner which is detrimental to the enjoyment of [*Fortnite*] by other users as intended by Epic, in Epic's sole judgment, including but not limited to… running or using methods which are not authorized by Epic and which interfere with the outcome and/or the course of [*Fortnite*], (including Cheats, bots, scripts, or mods not expressly authorized by Epic) by giving you and/or another user an advantage over other users who do not use such methods, or making or otherwise contributing to such unauthorized software."

39.     The *Fortnite* EULA defines "Cheats" as "programs, methods, or other processes which may give players an unfair competitive advantage in [*Fortnite*]."

40.     The *Fortnite* EULA terminates "automatically without notice if you fail to comply with any of its terms and conditions." "Upon any termination, the License will automatically terminate, you may no longer exercise any of the rights granted to you by the

License, and you must destroy all copies of [*Fortnite*] in your possession."

41.     Defendants' conduct described herein tortiously interferes with Epic's *Fortnite* EULAs with Defendants' customers who use Defendants' cheat software in *Fortnite*.

42.     Epic also employs a variety of technological protection measures that are designed to prevent cheat users from accessing and/or violating Epic's rights in *Fortnite*.

43.     For instance, downloads of *Fortnite* also include downloading Epic's cheat detection software, which is one of the measures Epic uses to restrict access to *Fortnite*. If the cheat detection software detects cheat software on a player's computer, the player will be prevented from launching *Fortnite* on their computer, viewing the *Fortnite* audiovisual displays, or otherwise using *Fortnite*.

44.     Epic also employs hardware ID bans against *Fortnite* players that are detected using cheat software. When Epic applies a hardware ID ban to a particular user's hardware (i.e., computer), that hardware (identified by the hardware's unique identifiers) is prevented from loading and using *Fortnite*.

45.     As a result of Epic's cheat detection software and hardware ID bans, *Fortnite* players who are detected using or attempting to use cheat software are prevented from launching or otherwise using *Fortnite*, or are immediately kicked out of *Fortnite*.

**D.     Defendants and Their Unlawful Acts**

### ***Defendants' Vanta Cheat Software***

46.     Sincey Cheats develops, updates, and maintains cheat software for *Fortnite* that is then distributed to end users through various distribution platforms including his own and those operated by resellers.

47.     Sincey Cheats has advertised and sold his *Fortnite* cheat software through various websites (e.g., vantacheats.io, vantacheats.cc, vantaesport.com, and

fairuseandunderpenaltyorperjuryiamacooldude.myshopify.com), Discord, and Telegram under the brand name "Vanta."

48.     Sincey Cheats sells subscriptions to the Vanta cheat software where users pay a fee to license the cheat software for a certain amount of time.  Users can purchase a one-week subscription for $9.99, a one-month subscription for $19.99, and a lifetime subscription for $29.99.  Sincey Cheats has sold his cheat software since at least January 2023.

49.     Doe 1 has been a reseller of the Vanta cheat software that has advertised and sold the cheat software through its websites (e.g., kezzaservices.com, kezzaservices.xyz, kezzaservices.cc), Discord, and Telegram.  Doe 1 resold subscriptions to the Vanta cheat software for approximately the same prices and durations as Sincey Cheats.

50.     On information and belief, Does 2-5 are or have been resellers of the Vanta cheat software that advertise and sell the cheat software through websites, Discord, and/or Telegram, including but not limited to the smireselling.sellpass.io website, the "Smi – Reselling" Discord server, phantomcheats.ch, and the Phantom Cheats Discord server.  Does 2-5 resell subscriptions to the Vanta cheat software for approximately the same prices and durations as Sincey Cheats and Doe 1.

51.     Because Defendants have sold subscriptions to the Vanta cheat software, they have the ability to disable the cheat software, which on information and belief, would prevent the cheat software from operating for anyone that purchased it.

52.     *Fortnite* players who purchase and use the Vanta cheat software are given an unfair competitive advantage over non-cheating players.  For example, the cheat software's aimbot feature automatically aims at other players without requiring input from the cheat software user.  The cheat software user aims perfectly every time without using their controller

or mouse and keyboard to aim at the target, while a non-cheating user must develop and use their aiming skills with their input devices to hit their targets.

53.     The "ESP" (extra-sensory perception) feature of the Vanta cheat software also provides an unfair competitive advantage for cheating players by allowing those players to see enemy players and items through walls and other terrain, and displaying additional information about those players that is not normally visible in *Fortnite*.  The cheat software draws boxes around enemy players, displays their orientation, and shows the cheat user how far away the enemy player is and what weapon the enemy player is currently using.  A screenshot of this feature of the cheat software is shown below, with the red and white boxes showing the location of enemy players, and white text showing information about those players:



54.     On information and belief, the Vanta cheat software has previously included other features that gave its users additional unfair competitive advantages in *Fortnite*, including but not limited to teleport, which rapidly teleports the cheat user to a new position in *Fortnite* to help the

cheat user more easily defeat other *Fortnite* players, and triggerbot, which automatically fires a weapon when the cheat user's crosshair is aimed at an enemy.

55.     Defendants infringed Epic's copyrighted works including through the development and distribution of the Vanta cheat software.

56.     Epic encrypts certain data and processes in *Fortnite* as one security measure to protect against cheat software.  This encryption protects the data and functions (e.g., data corresponding to player location and player names) from being visible to cheat developers, who may use this information when creating cheat software.

57.     Because that data is encrypted, Epic's *Fortnite* copyrights also include certain software code corresponding to decryption methods necessary for *Fortnite* to operate with the encrypted data.

58.     On information and belief, Sincey Cheats copied the software code for these decryption methods from *Fortnite* in order to create the Vanta cheat software.

59.     Each time the cheat software is run on a computer, a copy of the cheat software code—and thus the copied portions of the *Fortnite* software code—is created.

60.     And, each copy of the Vanta cheat software that Defendants sold, and that were used by their customers, included copied portions of the *Fortnite* software code.

61.     The Vanta cheat software also incorporates technology that is specifically designed and marketed to evade Epic's anti-cheat technological protection measures.  For example, the product listing page for the Vanta cheat software explained that one way it avoided detection by Epic is that "[e]ach customer receives a loader uniquely tied to [the customer's] license key, making every loader distinct," and as a result, if Epic identifies a customer as a cheat user, "Fortnite will only detect [the particular customer's] specific loader, leaving everyone else

[who uses the cheat software] unaffected." The Vanta cheat software is specifically designed to avoid detection by disguising each loader (a component of the cheat software) used by each customer.

62.    The Vanta cheat product listing page currently says that it is "undetected," referring to its claimed ability to avoid detection by Epic's anti-cheat measures.

63.    Sincey Cheats has also posted in his Discord server about updates made to the *Fortnite* cheat software, at one point posting "BattlEye detection fixed" as part of the notes on an update. BattlEye is one of the cheat detection measures that has been used by Epic to prevent cheat users from accessing and using *Fortnite* while cheating. On information and belief, this post meant that Sincey Cheats had updated the Vanta cheat software to no longer be detectable by BattlEye.

64.    Sincey Cheats has similarly boasted on the Vanta Telegram channel that, as a result of an update to his cheat software, the "cheat cannot be signature detected anymore like [E]pic used to." On information and belief, this refers to an update that Sincey Cheats incorporated into the cheat software in order to avoid Epic's anti-cheat technological protection measures that identified the unique signature associated with the cheat software file(s) that attempted to connect to *Fortnite*.

65.    Sincey Cheats' Discord channel also includes in an announcement about its most recent version of the Vanta cheat software that it "is the hardest version to detect we've ever made," and that it has "no more stupid detection issues." On information and belief, this post meant that Sincey Cheats had updated the Vanta cheat software to avoid detection by Epic's anti-cheat measures that control access to *Fortnite*.

66.    Doe 1 has similarly advertised the Vanta cheat software as "Undetected on Easy

Anti Cheat." Easy Anti Cheat is another cheat detection measure used by Epic to prevent cheat users from accessing and using *Fortnite* while cheating.

67.     Does 2–5 have also advertised the Vanta cheat software as "UNDETECTED" on smireselling.sellpass.io, and as "UD" (referring to "Undetected") on the Phantom Cheats Discord server. On information and belief, "UNDETECTED" refers to the Vanta cheat software's purported ability to avoid Epic's anti-cheat measures. The phantoncheats.ch website further claims that the Vanta cheat software "works with all major anti-cheat systems" and receives "regular updates to maintain undetectability." Sincey Cheat also advertises that the cheat software is "Undetected" on the Cheat Status page of his website.

68.     Defendants have also sold and updated a hardware ID ("HWID") spoofer, which is software that is used to disguise the true identifiers associated with the user's hardware in order to avoid hardware ID bans from *Fortnite* implemented by Epic. The HWID spoofers generate random hardware identifiers for the cheat user's computer so that the computer appears to *Fortnite* to be a different computer than the one that is banned from loading and using *Fortnite*. As a result, cheat users that have been banned from accessing *Fortnite* from their specific hardware can access *Fortnite* by using Defendants' HWID spoofers.

69.     Sincey Cheats and Doe 1 have marketed the HWID spoofer exclusively as a tool to avoid Epic's hardware bans and access *Fortnite*. One Vanta website page has claimed that "Vanta HWID Spoofer is the best solution to make sure your computer is ready for another cheating session!", and another page advertises: "Been banned from fortnite? Our HWID Spoofer can help you get back in the game quickly!" with a link to the HWID spoofer product page. Doe 1 stated that the HWID spoofer on its website "[w]orks for Fortnite" and has "Fortnite Tournaments Support."

70.     Does 2–5 have similarly marketed the HWID spoofer as "the ultimate solution for gamers who want to protect your hardware from permanent bans," and "changes all hardware identifiers that games and anti-cheat systems use to track your system."

71.     Defendants developed and/or distributed the Vanta cheat software despite creating Epic accounts and agreeing to the *Fortnite* EULA prohibiting such conduct.  Defendants' development and distribution of the Vanta cheat software breached the *Fortnite* EULA.

72.     On information and belief, even after Defendants breached the *Fortnite* EULA and their respective licenses to download and use *Fortnite* had automatically terminated, Defendants did not destroy their copies of *Fortnite* and continued to access and use *Fortnite* without a license or authorization to do so.

### ***Defendants' Intentional Interference with Epic's EULAs and Contributory Infringement***

73.     Defendants know that the Vanta cheat software they distribute is prohibited by the *Fortnite* EULA between Epic and *Fortnite* players in the United States.  Defendants further know that their interference with Epic's contracts with these *Fortnite* players is not justified as evidenced by the steps they have taken to make their customers' use of the cheat software on *Fortnite* undetectable.

74.     Defendants have marketed the Vanta cheat software as "undetected" by Epic's technological protection measures and tout methods by which it avoids detection.

75.     On information and belief, Defendants market the cheat software as undetected because they are aware that if Epic is able to detect *Fortnite* players using the cheat software, those players would be in violation of the *Fortnite* EULA, and customers would no longer buy the cheat software.

76.     Defendants warn their customers that their use of the Vanta cheat software may result in getting banned from *Fortnite* and caution their customers to try to disguise their

cheating and to "use our products in a 'legit gameplay' manner to avoid game bans" and that if they "blatantly aimbot everyone" they may reveal that they are cheating and get banned from *Fortnite*.

77. On information and belief, Defendants provide these warnings because they are aware that the use of the Vanta cheat software violates the *Fortnite* EULA and that Epic will ban Defendants' customers from *Fortnite* if they are caught cheating.

78. Defendants intend to provide their customers with an unfair advantage in *Fortnite* by distributing the Vanta cheat software, and thus knowingly induce their customers to breach the *Fortnite* EULA because the features of the Vanta cheat software can only be used to provide players an unfair competitive advantage in *Fortnite*.

79. In order to play *Fortnite* with the Vanta cheat software, Defendants' customers all downloaded a copy of *Fortnite* onto their computer. Each of these players using cheat software agreed to the *Fortnite* EULA, which are binding contracts between each *Fortnite* player and Epic.

80. Each of these players breached the *Fortnite* EULA by using the Vanta cheat software to gain an unfair competitive advantage over other *Fortnite* players.

81. As a result of this breach, the *Fortnite* EULA between Epic and these players that used the Vanta cheat software automatically terminated, thus their license to use *Fortnite* terminated, and they were required to destroy all copies of *Fortnite* in their possession.

82. The players who used the Vanta cheat software did not destroy their copies of *Fortnite*, and these players are infringing Epic's copyrights by continuing to use the Vanta cheat software on unauthorized and unlicensed copies of *Fortnite* after their *Fortnite* EULA with Epic terminated.

<u>***Defendants' Promotion of the Vanta Cheat Software and False DMCA Communications***</u>

83.    Defendants and their agents create and post numerous videos on YouTube and TikTok to demonstrate and advertise the Vanta cheat software.

84.    Sincey Cheats owned and operated the "Sincey" YouTube channel, where he posted videos advertising the Vanta cheat software, including gameplay videos of *Fortnite* that displayed the audiovisual outputs of *Fortnite*.  A screenshot from Sincey Cheat's video titled "Vanta Fortnite | The Last Cheat You Ever Need" is shown below:



85.    Doe 1 owns and operates the "Kezza Services" YouTube channel, where Doe 1 also posts videos advertising the Vanta cheat software, including gameplay videos of *Fortnite* that displayed the audiovisual outputs of *Fortnite*.

86.     Sincey Cheats also operates a Telegram server for the Vanta cheat software where he posts announcements about the Vanta cheat software, maintains chat rooms to discuss the Vanta cheat software, and posts links to media advertising the Vanta cheat software's features.

87.     Those who want their video advertising the Vanta cheat software posted on the Vanta Telegram server must first send the video to the server's administrators, which includes Sincey Cheats.

88.     On information and belief, once the administrator approves the video, a link to the video is posted in the Vanta Telegram server's "Media" channel.

89.     The Ramenz YouTube channel regularly makes videos that are posted in the Vanta Telegram server and Vanta Discord server that show the Vanta cheat software being used while playing *Fortnite*.  The Ramenz YouTube channel has also been listed as one of "Our Socials" on the Vanta website where the Vanta cheat software is sold.

90.     The Ramenz channel created and posted several YouTube videos demonstrating the Vanta cheat software's functionality, which included videos of *Fortnite* gameplay with the cheat software operating.  The videos' descriptions link to one of the Vanta websites (store.vantacheats.win) and the Vanta Telegram channel, encouraging viewers to purchase the Vanta cheat software.  A true and correct screenshot from the "Using FORTNITE CHEATS with the **BEST SOFTAIM** Undetected" video with *Fortnite* gameplay and the cheat software in action is shown below:



91.     Epic and/or its authorized agents regularly submit takedown requests to YouTube under the DMCA, 17 U.S.C. § 512(c), regarding videos promoting and advertising cheat software for *Fortnite* that includes *Fortnite* gameplay because the videos infringe Epic's copyrights.

92.     Three of Ramenz's videos promoting the Vanta cheat software were among the videos for which Epic and/or its authorized agents submitted DMCA takedowns to YouTube.

93.     On or about April 24, 2024, without Epic's knowledge or authorization, Sincey Cheats sent multiple emails to YouTube's designated copyright agent impersonating an Epic employee and falsely claiming that Epic wanted to "formally reverse [its] claim of copyright infringement" with respect to the three Ramenz videos advertising the Vanta cheat software, and that Epic had "been in contact with the content creator, and after a thorough review, we have determined that the material in question does not infringe our copyright."

94.     In addition to these false statements, the email was manipulated to appear as if it

had come from Epic by appearing to originate from an email address with the domain name @epicgames.com, using the name of an actual Epic employee, and using "Epic Games, Inc." in the signature block.

95. Sincey Cheats sent at least 11 virtually identical copies of this same fraudulent email to YouTube's designated copyright agent. True and correct copies of these emails are attached as **Exhibit 4**.

96. Also on or about April 23, 2024, Sincey Cheats sent a different fraudulent email to YouTube's designated copyright agent while impersonating the same Epic employee, writing to "inquire about the status of several videos I reported," presumably under the DMCA, because the content allegedly reported was "still live" and asking for "an update on the review process." A true and correct copy of this email is attached as **Exhibit 5**.

97. On information and belief, Sincey Cheats also submitted fake DMCA takedowns against other videos on YouTube while impersonating Epic that were not authorized by Epic.

98. Epic has never authorized Sincey Cheats to send any emails on its behalf, and only discovered these emails because a notification that delivery of the emails to some recipients had failed was sent to the actual Epic employee's email inbox.

### *Harm to Epic*

99. Defendants' creation, advertising, sale, and distribution of the Vanta cheat software has caused significant harm to Epic.

100. In an attempt to stop the players using the Vanta cheat software in *Fortnite*, Epic has expended resources investigating Defendants, the Vanta cheat software, developing and implementing detections, and notifying and/or banning *Fortnite* players that are using the Vanta cheat software to obtain a competitive advantage in *Fortnite*.

101. Despite Epic's efforts, Defendants continue selling and promoting the Vanta cheat

and designing software and technology to circumvent Epic's technological anti-cheat measures.

102. On information and belief, *Fortnite* players that use the Vanta cheat software undermine the integrity of these games and cause non-cheating players to stop playing. Epic is harmed when non-cheating players stop playing *Fortnite* because these players no longer purchase in-game passes, cosmetics, and related items.

103. An unknown number of *Fortnite* players are using the Vanta cheat software to obtain an unfair competitive advantage in *Fortnite*.

**<u>COUNT I</u>**
**Trafficking in Circumvention Technology**
**(17 U.S.C. §§ 1201(a)–(b))**
**(Against All Defendants)**

104. Epic realleges and incorporates fully by reference the allegations in paragraphs 1 through 103 of this complaint, as if set forth fully herein.

105. Epic is the owner of valid, registered, and enforceable copyrights in *Fortnite*.

106. Epic has designed and implemented technological measures, including but not limited to cheat detection software such as Easy Anti Cheat and BattlEye and hardware ID bans.

107. In the ordinary course of the operation of these technological measures, they require the application of information, or a process or a treatment, with the authority of Epic, to gain access to *Fortnite*, and/or they prevent, restrict, or otherwise limit the exercise of a right of Epic in *Fortnite*.

108. Defendants manufacture, import, offer to the public, provide, or otherwise traffic in the Vanta cheat software that contains technology, products, services, devices, components, or parts thereof, that (A) is primarily designed or produced for the purpose of circumventing Epic's technological measure(s) that effectively controls access to *Fortnite*; (B) has only limited commercially significant purpose or use other than to circumvent a technological protection

measure that effectively controls access to *Fortnite*; and/or (C) is marketed by Defendants for use in circumventing technological protection measure(s) that effectively control access to *Fortnite*.

109.    Defendants manufacture, import, offer to the public, provide, or otherwise traffic in a technology, product, service, device, component, or part thereof, that (A) is primarily designed or produced for the purpose of circumventing protection afforded by technological measure(s) that effectively protects a right of Epic in *Fortnite* or a portion thereof; (B) has only limited commercially significant purpose or use other than to circumvent protection afforded by technological protection measure(s) that effectively protect a right of Epic in *Fortnite* or a portion thereof; and/or (C) is marketed by Defendants for use in circumventing protection afforded by technological protection measure(s) that effective protect a right of Epic in *Fortnite* or a portion thereof.

110.    As a direct result of Defendants' trafficking, Epic has been injured, and will continue to be injured.

111.    Defendants' actions were and are willful.

112.    Defendants' conduct has caused irreparable harm to Epic, and, unless enjoined, will cause further irreparable harm for which Epic has no adequate remedy at law.

113.    Epic is entitled to the relief provided by 17 U.S.C. § 1203, including, but not limited to, injunctive relief, an order for the impounding, modification, or destruction of any device or product in Defendants' custody or control involved in the circumvention of Epic's technological measures, damages measured at Epic's election either by Epic's actual damages and Defendants' profits, or statutory damages, and Epic's costs and attorneys' fees.

## COUNT II
### Tortious Interference with a Contract
### (North Carolina Common Law)
### (Against All Defendants)

114.    Epic realleges and incorporates fully by reference the allegations in paragraphs 1 through 113 of this complaint, as if set forth fully herein.

115.    In order to download, play, or otherwise access *Fortnite*, a user must agree to the *Fortnite* EULA.

116.    By agreeing to the *Fortnite* EULA, that user enters into a valid and enforceable contract with Epic.

117.    The *Fortnite* EULA expressly prohibits:

(a)     "us[ing] any unauthorized software programs to gain advantage in any online or other game modes;" and

(b)     "behave[ing] in a manner which is detrimental to the enjoyment of [*Fortnite*] by other users as intended by Epic, in Epic's sole judgment, including but not limited to… running or using methods which are not authorized by Epic and which interfere with the outcome and/or the course of [*Fortnite*], (including Cheats, bots, scripts, or mods not expressly authorized by Epic) by giving you and/or another user an advantage over other users who do not use such methods, or making or otherwise contributing to such unauthorized software."

118.    Defendants know that players must agree to the *Fortnite* EULA before downloading, playing, or otherwise accessing *Fortnite*.

119.    Defendants know that use of the Vanta cheat software constitutes a material breach of the *Fortnite* EULA.

120. Defendants' customers cannot use the Vanta cheat software while playing *Fortnite* without breaching the *Fortnite* EULA.

121. Defendants have nonetheless intentionally encouraged their customers to breach the *Fortnite* EULA by creating, advertising, selling, and otherwise distributing the Vanta cheat software.

122. Defendants have intentionally interfered, and will continue to interfere, with the contracts formed between Epic and Defendants' customers who use the Vanta cheat software while playing *Fortnite*.

123. Defendants do not have justification for their intentional interference with the contracts between Epic and *Fortnite* players.

124. Defendants' creation, advertisement, sale, and distribution of the Vanta cheat software facilitate cheating and is not a legitimate business purpose.

125. Defendants' creation, advertisement, sale, and distribution of the Vanta cheat software is not lawful.

126. Defendants' tortious conduct constitutes unfair and deceptive trade practices.

127. As a result of Defendants' actions, Epic has suffered damages in an amount to be proven at trial including, but not limited to, loss of goodwill among users of Epic's services, decreased profits, and lost profits from players who no longer play *Fortnite* because of Defendants' actions.

128. As a direct result of Defendants' actions, Epic has sustained, and will continue to sustain, substantial, immediate, and irreparable harm for which there is no adequate remedy at law. Epic is entitled to injunctive relief to restrain and enjoin Defendants' continuing unlawful conduct.

129.    Epic is further entitled to compensatory damages and any other available relief the Court deems just.

## COUNT III
### Direct Copyright Infringement
### (17 U.S.C. § 501, *et seq.*)
### (Against All Defendants)

130.    Epic realleges and incorporates fully by reference the allegations in paragraphs 1 through 129 of this complaint, as if set forth fully herein.

131.    Epic owns multiple valid, registered, and enforceable copyrights in *Fortnite*.

132.    These copyrights are represented in the copyright registration certificates referenced above and set out in Exhibit 1.

133.    As the owner of the copyrights in *Fortnite*, Epic has the exclusive right to reproduce the copyrighted works, prepare derivative works, distribute copies of the copyrighted works, and to perform the copyrighted works publicly.

134.    Through the development and sale of the Vanta cheat software, Defendants made unauthorized copies of *Fortnite*'s software code. This conduct infringes Epic's copyrights in *Fortnite* including by reproducing, without Epic's authorization, the copyrighted works.

135.    Epic has not authorized Defendants to publicly display or publicly perform the copyrighted works, or any derivative works thereof.

136.    Defendants also have infringed Epic's copyrights in *Fortnite* by reproducing, publicly displaying, or performing, without Epic's authorization, the copyrighted works through videos posted, for example, on YouTube.

137.    On information and belief, Epic has suffered actual damages as a result of Defendants' infringement, including lost sales and profits.

138.    Epic is also entitled to receive any additional profits made by Defendants in

connection with their infringement.

139.     Alternatively, Epic is entitled to statutory damages pursuant to 17 U.S.C.

§ 504(c).

140.     Defendants' infringement was willful.  Defendants knowingly and intentionally

infringed Epic's copyrights by posting infringing videos online without Epic's authorization.

**COUNT IV**
**Secondary Copyright Infringement**
**(17 U.S.C. §§ 106, 501 *et seq.*)**
**(Against All Defendants)**

141.     Epic realleges and incorporates fully by reference the allegations in paragraphs 1

through 140 of this complaint, as if set forth fully herein.

142.     Epic owns multiple valid, registered, and enforceable copyrights in *Fortnite*.

143.     These copyrights are depicted in the copyright registration certificates referenced

above and set out in Exhibit 1.

144.     When the Vanta cheat software operates on a cheater's computer, it creates

unauthorized copies of *Fortnite*'s software code that are contained within the cheat software.

145.     Defendants are contributorily liable for the infringing acts of the purchasers of the

Vanta cheat software that used the cheat.

146.     Defendants have actual and constructive knowledge of the infringing activity of

purchasers and users of the Vanta cheat software, including that each time the cheat software is

used, unauthorized copies of the incorporated *Fortnite* software code is created.

147.     And Defendants knowingly induced, caused, or materially contributed to the

infringement by their customers who use the products while playing *Fortnite*, including through

its sale and promotion of the cheat software.

148.     Defendants also have the right and ability to control the infringing actions of the

customers who use the products while playing *Fortnite*, including by disabling the Vanta cheat software, and receive a direct financial benefit through the sale of the cheat software.

149.     Moreover, in order to download, play, or otherwise access *Fortnite*, a user must agree to the *Fortnite* EULA.

150.     The *Fortnite* EULA constitutes a limited license to users seeking to download, play, or otherwise access *Fortnite*.  Users are only licensed to play *Fortnite* while abiding by the *Fortnite* EULA.

151.     The *Fortnite* EULA expressly prohibits use of methods "which are not authorized by Epic and which interfere with the outcome and/or the course of [*Fortnite*] (including Cheats, bots, scripts, or mods not expressly authorized by Epic) by giving you and/or another user an advantage over other users who do not use such methods, or making or otherwise contributing to such unauthorized software."

152.     The use of the Vanta cheat software by Defendants' customers constituted a material breach of the *Fortnite* EULA.

153.     After the Vanta cheat software users breached the *Fortnite* EULA, those players' licenses were terminated and the players were no longer authorized to download, play, or otherwise access *Fortnite*.  The Vanta cheat software users directly infringed Epic's exclusive rights in the copyrighted works by continuing to download, play, and otherwise access *Fortnite* despite not having any license to do so.

154.     By creating, advertising, selling, and otherwise distributing the Vanta cheat software knowing that such products cannot be used without breaching the license set forth in the *Fortnite* EULA, Defendants induced, caused, or materially contributed to the infringement by their customers who use the products while playing *Fortnite*.

155. Defendants also reviewed, approved of, and promoted videos demonstrating the features of the Vanta cheat software, which included videos of *Fortnite* gameplay. In so doing, Defendants induced, caused, or materially contributed to the infringement by the creators of these videos.

156. Defendants knowingly, intentionally, and willfully induced, caused, or materially contributed to users violating their license agreements with Epic regarding *Fortnite*.

157. As a result of Defendants' conduct as described herein, including their contributory and vicarious infringement, Epic has suffered damages, including lost sales and profits.

158. Epic is also entitled to receive any additional profits made by Defendants in connection with their infringement.

159. Alternatively, Epic is entitled to statutory damages pursuant to 17 U.S.C. § 504(c).

## COUNT V
**Fraudulent DMCA Communications**
**(17 U.S.C. § 512(f))**
**(Against Sincey Cheats)**

160. Epic realleges and incorporates fully by reference the allegations in paragraphs 1 through 159 of this complaint, as if set forth fully herein.

161. Epic owns multiple valid, registered, and enforceable copyrights in *Fortnite*.

162. These copyrights are depicted in the copyright registration certificates referenced above and set out in Exhibit 1.

163. Sincey Cheats sent multiple emails to YouTube's designated copyright agent that contained material misrepresentations that Ramenz's YouTube videos displaying *Fortnite* gameplay featuring the Vanta cheat software were not infringing.

164.    Sincey Cheats sent these emails while impersonating an Epic employee and without Epic's knowledge or authorization.

165.    Sincey Cheats knew that his representations in these emails were false.

166.    On information and belief, Sincey Cheats also submitted DMCA takedown requests to YouTube while impersonating an Epic employee for videos that may not infringe Epic's copyrights in *Fortnite*.

167.    Epic was injured by these misrepresentations, including but not limited to by the reinstatement of Ramenz's infringing videos that were the subject of Epic's initial DMCA takedown requests, incurring costs and expenses, including attorneys' fees, and harm to its business in the form of lost profits and/or injury to its goodwill and reputation.

168.    Epic is entitled to recover its damages, including costs and attorneys' fees, it suffered as a result of Sincey Cheats's misrepresentations in an amount to be proved at trial.

## COUNT VI
### False Designation of Origin
### (15 U.S.C. § 1125(a))
### (Against Sincey Cheats)

169.    Epic realleges and incorporates fully by reference the allegations in paragraphs 1 through 168 of this complaint, as if set forth fully herein.

170.    Epic owns common law and federally-registered rights in the EPIC GAMES mark (U.S. Reg. Nos. 2,527,709, 5,712,420, and 6,895,482) in connection with, among other things, video game software, video game software development, electronic commerce, and related goods and services.

171.    As described above, Sincey Cheats used the EPIC GAMES mark in order to mislead YouTube into believing that the DMCA takedown-related emails from Sincey Cheats were actually from Epic.

-31-

172.     Sincey Cheats' use of the EPIC GAMES mark is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Sincey Cheats with Epic, or as to the origin, sponsorship, or approval of Sincey Cheats' DMCA takedown-related emails to YouTube.

173.     Sincey Cheats used the EPIC GAMES mark without Epic's authorization.

174.     Sincey Cheats' infringement of the EPIC GAMES mark was willful.

175.     Sincey Cheats' false designation of origin and unfair competition constitute unfair and deceptive trade practices.

176.     Epic is entitled to compensatory damages, enhanced damages, and/or costs incurred in pursuing this action.

177.     This is an exceptional case under 15 U.S.C. § 1117(a), entitling Epic to recover its attorneys' fees incurred in connection with this action.

### COUNT VII
### Violation of North Carolina Unfair Competition Law
### (N.C. Gen. Stat. § 75-1.1, *et seq.*)
### (Against All Defendants)

178.     Epic realleges and incorporates fully by reference the allegations in paragraphs 1 through 177 of this complaint, as if set forth fully herein.

179.     Defendants' actions described herein, particularly with regard to their tortious interference with Epic's *Fortnite* players and unfair competition, as alleged above, constitute an unfair or deceptive act or practice.  Such acts include but are not limited to their creation and distribution of the Vanta cheat software that provides an unfair competitive advantage in *Fortnite* to the cheat software's users, and Defendants' advertisement of the Vanta cheat software in violation of Epic's intellectual property rights.

180.     At all relevant times, Defendants have been and continue to be engaged in

commerce in or affecting North Carolina as defined by Chapter 75 of the North Carolina General Statutes, including but not limited to promotion and sale of Vanta cheat software.

181.    Defendants' activities affect commerce in North Carolina and elsewhere, including but not limited to their revenue earned from the sale of the Vanta cheat software, their effect on the competitive environment and market for *Fortnite*, and the ability of their advertisements for the Vanta cheat software on YouTube remaining active.

182.    Epic has been injured by Defendants' activities, including but not limited to resources expended investigating and implementing detections for the Vanta cheat software, harm to the market for *Fortnite* caused by Vanta cheat software users, Epic's lost sales, and Defendants' profits.

183.    As a direct and proximate result of this unfair and deceptive conduct, Epic has been damaged and is entitled to a judgment against Defendants for actual damages, and those damages are to be trebled pursuant to N.C. Gen. Stat. § 75-16.

184.    Epic is also entitled to an award of its attorneys' fees pursuant to N.C. Gen. Stat. § 75-16.1.

## V.    JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Epic demands a trial by jury as to all issues so triable in this action.

## VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Epic Games, Inc. prays for the following relief:

A.    That judgment be entered in Epic's favor against Defendants on all claims, including but not limited to an order:

1)    That Defendants and their officers, agents, representatives, servants, employees, heirs, successors, and assigns, distributors, dealers, members,

-33-

affiliates, and all others in active concert or participation with Defendants be permanently enjoined from:

a.      Infringing, or inducing, contributing, or enabling others to infringe Epic's copyrights including without limitation by developing, selling or distributing cheat software for *Fortnite*;

b.      Creating, advertising, selling, distributing, or otherwise trafficking in any software or technology that (A) is primarily designed or produced for the purpose of circumventing Epic's technological measure(s) that effectively controls access to *Fortnite*; (B) has only limited commercially significant purpose or use other than to circumvent a technological protection measure that effectively controls access to *Fortnite*; and/or (C) is marketed by Defendants for use in circumventing technological protection measure(s) that effectively control access to *Fortnite*;

c.      Creating, advertising, selling, distributing, or otherwise trafficking in any software or technology that (A) is primarily designed or produced for the purpose of circumventing protection afforded by technological measure(s) that effectively protects a right of Epic in *Fortnite* or a portion thereof; (B) has only limited commercially significant purpose or use other than to circumvent protection afforded by technological protection measure(s) that effectively protect a right of Epic in *Fortnite* or a portion thereof; and/or (C) is marketed by Defendants for use in circumventing protection

afforded by technological protection measure(s) that effectively protect a right of Epic in *Fortnite* or a portion thereof;

d.     Interfering with Epic's *Fortnite* EULAs between Epic and any *Fortnite* user;

e.     Creating, writing, developing, advertising, promoting, offering for sale, selling, or otherwise distributing any cheat software that provides *Fortnite* players a competitive advantage in *Fortnite*, hosted at any domain, address, location, or ISP;

f.     Submitting fraudulent DMCA takedowns or related communications concerning *Fortnite* or any of Epic's copyright works;

g.     Use the EPIC GAMES mark in any way that is likely to cause confusion as to their association with Epic; and

h.     Aiding or assisting another person or entity in any of the activities described in (a)-(g) above.

2)   Requiring Defendants to deliver to Epic for impoundment or destruction all copies of materials that infringe or violate any of Epic's rights, as described herein, including, without limitation, the source code for the Vanta cheat software and/or any software that allows players to cheat in any game published by Epic.

3)   Requiring Defendants to provide Epic with an accounting of any and all sales of products or services that infringe or violate any of Epic's rights, as described herein.

4) That the domain name registries or registrars for the domain names listing the domain names vantacheats.io, vantacheats.cc, vantaesport.com, kezzaservices.com, kezzaservices.xyz, kezzaservices.cc, smireselling.sellpass.io, fairuseandunderpenaltyorperjuryiamacooldude.myshopify.com, phantomcheats.ch or any domain names used in connection with the enjoined activities (1) temporarily disable these domain names and make them inactive and non-transferable; and (2) transfer these domain names to Epic's ownership and control.

5) Enjoining third parties with notice of the injunction from providing services in connection with Defendants' sale or distribution of cheat software for *Fortnite*, including but not limited to enjoining domain name registries and registrars, website hosts, online search-based providers, and payment providers from providing services in connection with Defendants' domain names and websites used to distribute cheat software for *Fortnite*, including but not limited to PayPal, Cash App, Shopify, vantacheats.io, vantacheats.cc, vantaesport.com, fairuseandunderpenaltyorperjuryiamacooldude.myshopify.com, kezzaservices.com, kezzaservices.xyz, kezzaservices.cc, smireselling.sellpass.io, the "Smi – Reselling" Discord server, the "Fanta Community" Discord server, and the "Phantom Cheats" Discord server, and/or the corresponding domain names, or any subset of these domain names specified by Epic.

B.      An award to Epic of restitution and damages, including but not limited to compensatory, statutory (including enhanced statutory damages for willful infringement), damages, and all other damages permitted by law.

C.      That Epic be awarded pre-judgment and post-judgment interest on all damages awarded against Defendants.

D.      An award to Epic of its costs incurred in this suit as well as reasonable attorneys' fees.

E.      Other such relief as the Court deems just and proper.

Date: June 10, 2025

By: */s/ Robert C. Van Arnam*

**WILLIAMS MULLEN**

Robert C. Van Arnam (N.C. 28838)
Andrew R. Shores (N.C. 46600)
301 Fayetteville St., Suite 1700
Raleigh, NC 27601
Telephone: 919 981 4000
rvanarnam@williamsmullen.com
ashores@williamsmullen.com

**PERKINS COIE LLP**

Katherine M. Dugdale, Bar No. 168014*
KDugdale@perkinscoie.com
1888 Century Park East, Suite 1700
Los Angeles, California 90067-1721
Telephone:      310.788.9900
Facsimile:      310.788.3399

Jacob P. Dini, Bar No. 54115*
JDini@perkinscoie.com
1301 Second Avenue, Suite 4200
Seattle, Washington 98101
Telephone:      206.359.8000
Facsimile:      206.359.9000

*Counsel for Plaintiff*
*Notice of Special Appearance forthcoming

-37-