| | |
|---|---|
| EPIC GAMES, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| EDIZ ATAS aka SINCEY CHEATS and ) | |
| VANTA CHEATS, and DOES 1-5, ) | |
| ) | |
| Defendants. ) | |

This matter is before the court on the *ex parte* application [DE-10] by plaintiff Epic Games, Inc. ("Epic" or "plaintiff") to serve third-party subpoenas prior to a Rule 26(f) conference (the "*ex parte* motion").[1] Plaintiff filed an accompanying memorandum [DE-11] and two declarations [DE-12, -13] in support of its *ex parte* motion [DE-10]. Plaintiff seeks permission to take discovery from third parties: (i) Google LLC, (ii) Microsoft Corporation, (iii) Discord, Inc., (iv) PayPal, Inc., (v) X Corp., (vi) Stripe, Inc., (vii) Namecheap, Inc., and (viii) Sellpass LLC (collectively, the "named third parties") to ascertain information allegedly relevant to identifying Defendant Doe 1 and Defendant Doe 2 ("Doe Defendants"). Epic further requests to serve additional unspecified third-party subpoenas in the future. [DE-10] at 1. For the reasons below, the court GRANTS IN PART and DENIES IN PART Epic's *ex parte* motion [DE-10].

## I. FACTUAL BACKGROUND

Epic is the "author and owner of all rights and title to the copyrights in *Fortnite*," which plaintiff describes as "a multiplayer online experience where people interact in an online world." Compl. [DE-1] at ¶¶ 2, 23-24, 29-30. Epic alleges that named defendant Ediz Atas, ("defendant

---

[1] This motion has been referred to the undersigned magistrate judge for entry of an order under 28 U.S.C. § 636 (b).

Atas," also known as "Sincey" or "Sincey Cheats") both sells and is the primary developer of the "Vanta cheat software" for Epic's *Fortnite*, which allows users to cheat in *Fortnite* by providing competitive advantages over non-cheating players. *Id*. at ¶¶ 5, 46, 52-53. Epic claims that the Vanta cheat software infringes its copyrights in *Fortnite* because it includes copies of certain *Fortnite* software code, which is then distributed to anyone who buys the Vanta cheat software. *Id*. at ¶¶ 55-60. Epic further contends that the Vanta cheat software includes technology designed to circumvent Epic's technological measures that prevent cheat software users from accessing *Fortnite* in violation of the Digital Millennium Copyright Act. *Id*. at ¶¶ 9, 61. Epic alleges that Doe 1 and Doe 2 are resellers of the Vanta cheat software. *Id*. at ¶¶ 49-50.

Epic has been unable to identify Doe 1, who is alleged to operate online under the alias "Kezza" and to have advertised and sold the Vanta cheat software through its websites, as well as Discord and Telegram accounts. *Id*. at ¶¶ 19, 49; [DE-11] at 3. Epic has identified websites it believes to be owned or used by Doe 1: kezzaservices.xyz, kezzaservices.com, and kezzaservices.cc (collectively, the "kezza domains"). Compl. [DE-1] at ¶ 49. Epic alleges that each domain is registered through the same registrar, Namecheap, Inc., behind which Doe 1 hides its identity. [DE-11] at 4; *see* Declaration of Jacob P. Dini ("Dini Decl.") [DE-13] at ¶ 5; [DE-13-1] (screenshots of WHOIS information for the kezza domains). Test purchases from kezzaservices.com, through its payment processor Stripe, and additional investigation into Doe 1's alleged social media profiles on YouTube, X, and Discord, revealed email addresses allegedly associated with Doe 1: kezzaservices@outlook.com, kezzashop@gmail.com, and serviceskezza@gmail.com. [DE-11] at 3-4; *see* Declaration of Kelly Pereira ("Pereira Decl.") [DE-12] at ¶¶ 4-5; [DE-12-1] at 2. Epic alleges that Doe 1 previously used PayPal to process payments for the Vanta cheat software. [DE-11] at 4; *see* Pereira Decl. [DE-12] at ¶ 5; [DE-12-2]

2

at 2 (screenshot of announcement in Doe 1's alleged Discord server that PayPal payments would be accepted through the website: "https://paypalkezza.sellpass.io/").

Epic has also been unable to identify Doe 2, who is alleged to operate the websites smiresmelling.smellpass.io, phantomcheats.ch, and the Phantom Cheats Discord server, through which Epic contends Doe 2 resells Vanta cheat software. [DE-11] at 3; *see* Compl. [DE-1] at ¶¶ 20, 50. Epic alleges that its investigators conducted a test purchase from Doe 2 through Doe 2's Discord server, purchasing a key to the Vanta cheat software from a PayPal account associated with the email address: theacceptablegamerr@gmail.com. [DE-11] at 4; *see* Pereira Decl. [DE-12] at ¶ 6; [DE-12-3] at 2 (screenshot of PayPal receipt with theacceptablegamerr@gmail.com as the point of contact).

Epic filed the instant complaint on June 10, 2025. [DE-1]. Epic alleges following the filing of its complaint, both Doe 1 and Doe 2 have taken steps to "hide their illicit activities." [DE-11] at 4. Epic alleges that Doe 1 has (i) removed the kezzaservices.cc website completely (*id.*; *see also* Dini Decl. [DE-13] at ¶ 6; [DE-13-2] (screenshot of the website located at kezzaservices.cc, captured on July 2, 2025)) and (ii) contacted Epic's outside counsel directly via email but refused to provide any identifying information ([DE-11] at 4-5; *see also* Dini Decl. [DE-13] at ¶ 2-3).[2] Epic alleges that Doe 2 has also removed the Vanta cheat software product listing from the phantomcheats.ch website. [DE-11] at 5 (comparing [DE-13-3] (screenshots from Doe 2's alleged website on June 2, 2025, showing Vanta cheat software product page) with [DE-13-4] (screenshot from Doe 2's alleged website after Epic's complaint was filed showing products available, which does not include Vanta cheat software)).

---

[2] Epic asserts that on June 13, 2025, counsel for Epic sent a copy of the complaint and the exhibits to Doe 1, along with copies of forms requesting that Doe 1 identify themselves and waive service. Dini Decl. [DE-13] at ¶ 3; [DE-11] at 5 n.1.

3

## II. PROCEDURAL BACKGROUND

Epic has filed suit in the instant litigation against "Ediz Atas (a/k/a Sincey Cheats and Vanta Cheats) and DOES 1-5." Compl. [DE-1]. In its complaint, Epic identifies the defendant parties as follows: Ediz Atas is referred to therein as "Sincey Cheats" or collectively with the other defendants as "Defendants"; Doe 1 is referred to therein as "Doe 1" or collectively with Sincey Cheats and other Doe defendants as "Defendants"; Does 2-5 are referred to therein collectively with Sincey Cheats and Doe 1 as "Defendants." Compl. [DE-1] at ¶¶ 18-20.

Epic's *ex parte* motion seeks the identification of Doe 1 and Doe 2, and specifically refers to Doe 1 and Doe 2, collectively, as the "Doe Defendants."[3] [DE-10] at 1. Epic's *ex parte* motion has two requests: (1) "to take discovery from third parties Google LLC, Microsoft Corporation, Discord, Inc., PayPal, Inc., X Corp., Stripe, Inc., Namecheap, Inc., and Sellpass LLC" (the "initial third-party subpoenas"); and (2) "further requests permission to serve additional third party subpoenas, if necessary, to identify Doe Defendants based on the responses from the third party subpoenas to the above third parties" (the "additional third-party subpoenas"). *Id.*

## III. ANALYSIS

Generally, the Federal Rules of Civil Procedure only allow parties to engage in discovery after they have "conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d)(1). There are exceptions to this general rule, including an exception for discovery authorized by a court order. *Id*. To be able to engage in discovery prior to the Rule 26(f) conference, a party must show that there is good cause for it to do so.

While the Federal Rules of Civil Procedure do not set forth the standard to be applied in

---

[3] While Epic's complaint refers to Does 2-5, once, as "Doe defendants" ([DE-1] at ¶ 19), any reference to "Doe Defendants" in this Order refers only to, collectively, Doe 1 and Doe 2. Nothing in this Order should be construed as referring to Does 3-5.

assessing a motion for expedited discovery, courts typically apply either a reasonableness or good cause test taking into account the totality of the circumstances, or a modified preliminary injunction test. *See Dimension Data N. Am., Inc. v. NetStar-1, Inc.*, 226 F.R.D. 528, 531 (E.D.N.C. 2005); *Gaming v. W.G. Yates & Sons Constr. Co.*, No. 1:16CV30, 2016 WL 3450829, at *3 (W.D.N.C. 16 June 2016); *Lewis v. Alamance Cty. Dep't of Soc. Servs.*, No. 1:15CV298, 2015 WL 2124211, at *1 (M.D.N.C. 6 May 2015). This court has previously employed a four-part reasonableness test when considering requests for early discovery. *See Chryso, Inc.* v. *Innovative Concrete Sols. of the Carolinas, LLC*, No. 5:15-CV-00115-BR, 2015 WL 12600175, at *2–3 (E.D.N.C. June 30, 2015); *Me2 Prods., Inc. v. Does 1-16*, No. 4:16-CV-279-FL, 2016 WL 7017268, at *1 (E.D.N.C. Dec. 1, 2016). The undersigned does so here.

In this test, the court will consider the following factors:

[(1)] the procedural posture of the case,
[(2)] whether the discovery requested is narrowly tailored,
[(3)] whether the party seeking the information would be irreparably harmed by waiting until after the parties conduct their Rule 26(f) conference, and
[(4)] whether the information sought would be unavailable or subject to destruction in the absence of expedited production.

*Me2 Prods., Inc.*, No. 4:16-CV-279-FL, 2016 WL 7017268, at *1 (citing *Chryso*, 2015 WL 12600175, at *3).

The court notes the following additional considerations as relevant to its analysis below. For the second factor, in order to justify expedited discovery, the proposed discovery requests should be "narrowly tailored to focus on information believed to be probative" of the issue at hand. *Dimension Data N. Am., Inc.*, 226 F.R.D. at 532. However, if a court finds that expedited discovery is appropriate under the circumstances, the court may narrowly tailor the discovery to a permissible scope. *Nutrition & Fitness, Inc. v. Progressive Emu, Inc.*, No. 5:12-CV-192-F, 2012

WL 1478734, at *4 (E.D.N.C. Apr. 27, 2012); *see also Merz N. Am., Inc. v. Viveve Med. Inc.*, No. 2:17-CV-15-BR, 2017 WL 11613694, at *4 (E.D.N.C. May 5, 2017) (allowing in part and denying in part expedited discovery by narrowly tailoring the discovery request).

With respect to the third factor, the party seeking expedited discovery "must establish the existence of irreparable harm if expedited discovery is not permitted." *Merz*, 2017 WL 11613694, at *3. Damages that "are quantifiable and can be remedied through a damages award or eventual injunctive relief" do not demonstrate "irreparable harm of such an extent to require expedited discovery." *Chryso, Inc.*, 2015 WL 12600175, at *5 (citing *Dimension Data*, 226 F.R.D. at 532).

As noted above, Epic's *ex parte* motion includes two requests, and each will be addressed separately below.

**A.    Initial third-party subpoenas**

Epic first requests "permission to take discovery from third parties Google LLC, Microsoft Corporation, Discord, Inc., PayPal, Inc., X Corp., Stripe, Inc., Namecheap, Inc., and Sellpass LLC." [DE-10] at 1. Epic represents that it will request only "names, physical addresses, telephone numbers, payment information, account registration information, contact information, email addresses, and other identifying information—or information that could be used to identify the Doe Defendants with additional follow-up third party discovery, such as IP addresses with access dates and times and alternative email addresses." [DE-11] at 6.

The court finds this request was made in good faith. The court, however, will narrow the discovery request for the reasons below. *See Nutrition & Fitness, Inc*, 2012 WL 1478734, at *4.

With respect to the first factor, the instant case "is in its nascent stages and will be unable to move forward until [Epic] learns the [Doe Defendants] identity." *See Strike 3 Holdings, LLC v. Doe*, No. 5:25-CV-00299-BO, 2025 WL 1874974, at *2 (E.D.N.C. June 25, 2025). Thus, the

6

first factor weighs in Epic's favor.

For the second factor, Epic argues that "the information Epic seeks regarding these Doe Defendants is narrowly tailored to meet its objective to identify them." [DE-11] at 6. As noted above, Epic provides that it will request only "names, physical addresses, telephone numbers, payment information, account registration information, contact information, email addresses, and other identifying information—or information that could be used to identify the Doe Defendants with additional follow-up third party discovery, such as IP addresses with access dates and times and alternative email addresses." *See* [DE-11] at 6. As further noted above, the court may narrowly tailor the discovery if the court still finds that expedited discovery is appropriate under the circumstances. *See Nutrition & Fitness, Inc.*, 2012 WL 1478734, at *4; *see also Merz*, 2017 WL 11613694, at *4 (allowing in part and denying in part expedited discovery to narrowly tailor discovery). Epic seeks to identify the Doe Defendants so that Epic may move forward with its litigation. Epic's assertion, however, that it will request "names, physical addresses, telephone numbers, payment information, account registration information, contact information, email addresses, and other identifying information" as well as "information that could be used to identify the Doe Defendants" is overly broad in relation to this scope. [DE-11] at 6. Specifically, Epic's requests for "other identifying information," and "information that could be used to identify the Doe Defendants," without more, are overly broad. The court does not find at this time that such information is narrowly tailored to Epic's purpose of identification.

On the third factor, Epic alleges that it has "no way to address the copyright infringement and trafficking in circumvention devices by the Doe Defendants" and that Doe 2 is currently selling hardware ID spoofers which allow banned players to circumvent that ban. [DE-11] at 6-7. Epic claims that it will be irreparably harmed unless the court authorizes the subpoenas because it will

7

have no way to address the Doe Defendant's alleged copyright infringement and trafficking in circumvention devices. The court credit's Epic's representations that it is likely experiencing irreparable harm as a result of the Doe Defendant's actions and will continue to do so if the relevant discovery requests were postponed until after the parties' 26(f) conference. *See Strike 3 Holdings*, 2025 WL 1874974, at *2 ("Strike 3 will be irreparably harmed because it will have no way to address the alleged infringement described in the complaint.").

On the fourth factor, Epic argues that there is a risk that the Doe Defendants could destroy information Epic intends to seek and alleges that Doe 1 and Doe 2 have taken down websites and removed Vanta cheat software from product listings. [DE-11] at 7. The court is persuaded that such risk exists sufficient to warrant expedited discovery.

Taking into consideration each step and factor in the four-part reasonableness test, the court finds expedited discovery reasonable. Therefore, the court will narrowly tailor the scope of discovery to the following: names; telephone numbers; physical addresses; payment information; account registration information; contact information; IP addresses with access dates and times; and email addresses, including any alternative email addresses. *See Nutrition & Fitness, Inc.*, 2012 WL 1478734, at *4; *see also Merz*, 2017 WL 11613694, at *4 (allowing in part and denying in part expedited discovery to narrowly tailor discovery); *Me2 Prods., Inc.*, No. 4:16-CV-279-FL, 2016 WL 7017268, at *2 (allowing a "subpoena that seeks documents containing the name, permanent address, current address, telephone number, e-mail address, and media access control address of the defendant."); *Strike 3 Holdings, LLC v. Doe*, No. 5:24-CV-00241-BO, 2024 WL 2125606, at *3 (E.D.N.C. May 10, 2024) ("The subpoena may only seek the name and address of the person or persons . . . listed in the Complaint).

B. **Additional third-party subpoenas**

Epic "further requests permission to serve additional third-party subpoenas, if necessary, to identify Doe Defendants based on the responses from the third-party subpoenas to the [named] third parties." [DE-10] at 1. Epic's proposed order provides that Epic "may also serve follow-up subpoenas that are necessary to identify the Doe Defendants based upon the information provided by the above parties, without seeking additional leave from the Court." [DE-10-1].

Without knowing what information Epic seeks to discover and from whom through such follow-up subpoenas, the court is unable to engage in a meaningful four-step reasonableness test with respect to such a request. It suffices to say that such an open ended request is not "narrowly tailored" under the second factor of the reasonableness test. Epic's request essentially seeks broad permission to serve expedited subpoenas on third parties without leave from the court, so long as Epic deems such follow-up subpoena "necessary to identify the Doe Defendants." [DE-10-1]. Given the nature of *ex parte* motions, the court is not willing to accept this request as reasonable at this time. *See Amazon.com, Inc. v. Fitzpatrick*, No. C20-1662 RSM, 2021 WL 211540, at *2 (W.D. Wash. Jan. 21, 2021) (granting expedited discovery on numerous identified third parties to discover the identities of doe defendants, but denying plaintiff's further request for "leave to serve additional Rule 45 subpoenas on any other companies identified from any subpoena responses for the limited purpose of identifying and locating" doe defendants). To the extent that Epic perceives the need for additional third-party subpoenas in light of the response it receives to the initial third-party subpoenas, it may file an appropriate expedited motion at such time.

IV. **CONCLUSION**

For the reasons discussed above, the court GRANTS IN PART and DENIES IN PART Epic's *ex parte* motion [DE-10]. Specifically, the court (i) GRANTS Epic's request to serve third-

9

party subpoenas on Google LLC; Microsoft Corporation; Discord, Inc.; PayPal, Inc.; X Corp.; Stripe, Inc.; Namecheap, Inc.; and Sellpass LLC seeking the names; telephone numbers; physical addresses; payment information; account registration information; contact information; IP addresses with access dates and times; and email addresses, including any alternative email addresses of Doe 1 and Doe 2, as more fully detailed within this Order; (ii) DENIES without prejudice Epic's request to serve third-party subpoenas on the named third parties seeking other identifying information not expressly granted by the court above; and (iii) DENIES without prejudice Epic's request to serve additional third party subpoenas based upon responses from third party subpoenas without seeking additional leave from the court.

It is therefore ORDERED that:

1. The subpoenas must be served within 7 days from the entry of this order.

2. Epic must attach a copy of the complaint [DE-1] and this order to any subpoena it serves.

3. A third-party that receives a subpoena under this order must:

    a. Provide a copy of the subpoena, the complaint, and this order to any person or entity to whom the subpoenaed information relates (each an "affected person or entity") within 14 days of service. The third-party may send these documents to the affected person or entity's last known email address or mailing address.

    b. Not disclose the subpoenaed information to Epic until the later of 17 days after it sends the subpoena, the complaint, and this order to the affected person or entity or the resolution of a motion to quash the subpoena.

    c. Preserve all subpoenaed information until it either produces the information or the court grants a motion to quash the subpoena.

4. If the affected person or entity seeks to quash the subpoena, he, she, or it must do so within 14 days after receiving the subpoena, the complaint and this order from the third-party.

5. Epic must notify the third-party that a motion to quash has been filed within 24 hours after it receives notice of such a filing.

6. Epic may only use information received through the subpoena for purposes of this lawsuit.

7. Epic may not engage in any other discovery before the Rule 26(f) conference occurs or the court orders otherwise.

SO ORDERED, this 18th day of August, 2025.

_____
Brian S. Meyers
United States Magistrate Judge